UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

LENORE CLARK
on behalf of herself and all
others similarly situated,

    Plaintiff,

v.

BRUNSWICK CORPORATION
26125 Riverwoods Blvd., Suite 500
Mettawa, Illinois 60045

    Defendant

Case No. 19-cv-141

**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. §216(b)**

**JURY TRIAL DEMANDED**

---

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is a legal action brought pursuant to the Family and Medical Leave Act of 1993, as amended ("FMLA"), and the Fair Labor Standards Act of 1938, as amended, ("FLSA"), by Plaintiff, Lenore Clark, against Defendant, Brunswick Corporation.

2. Plaintiff brings her FMLA claims and causes of action against Defendant on behalf of herself.

3. Plaintiff brings her FLSA claims and causes of action against Defendant on behalf of herself and all other similarly situated current and former hourly paid, non-exempt Production employees of Defendant for purposes of obtaining relief under the FLSA for unpaid overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court may deem appropriate.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FMLA, 29 U.S.C. § 2601 *et seq.*, and the FLSA, 29 U.S.C. §§ 201, *et seq.*

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant has substantial and systematic contacts in this District.

## PARTIES

6. Plaintiff, Lenore Clark, is an adult female resident of the State of Wisconsin residing at 2235 Wisconsin Street, Oshkosh, Wisconsin 54901.

7. Defendant is an Illinois-based company with a principal office address of 26125 Riverwoods Blvd., Suite 500, Mettawa, Illinois 60045.

8. Defendant's registered agent for service in the State of Wisconsin is CT Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 53703.

9. Defendant designs, manufactures, and markets marine, fitness, billiards, and recreational products.

10. During the three (3) years immediately preceding the filing of this Complaint (ECF No. 1), Defendant operated production facilities across the United States, including in the State of Wisconsin.

## COVERAGE

11. For purposes of the FMLA, Plaintiff brings this action on behalf of herself.

12. During Plaintiff's employment with Defendant, it was a covered employer for FMLA purposes.

13. During Plaintiff's employment with Defendant, she did not meet the criteria under 29 C.F.R. § 825.217(a), which defines "key employee" as used in the FMLA.

14. During Plaintiff's employment with Defendant and at the time of her FMLA leave requests, Defendant employed at least fifty (50) employees within seventy-five (75) miles of its Fond du Lac, Wisconsin location.

15. During Plaintiff's employment with Defendant and at the time of her FMLA leave requests, Plaintiff had been employed by Defendant for twelve (12) months and had worked at least 1,250 hours during the prior twelve (12) months.

16. During Plaintiff's employment with Defendant, Plaintiff did not exceed the amount of FMLA leave for any FMLA leave entitlement period.

17. For purposes of the FLSA, Defendant was an "employer" of "employees," Plaintiff and all others similarly-situated, as those terms are used in 29 U.S.C. §§ 203(d) and (e).

18. During the three (3) years immediately preceding the filing of this Complaint (ECF No. 1), Plaintiff worked as an hourly-paid, non-exempt Production employee at Defendant's Fond du Lac, Wisconsin location.

19. Plaintiff's Notice of Consent to Join this collective action pursuant to 29 U.S.C. § 216(b) is contemporaneously filed with this Complaint (ECF No. 1).

20. During the three (3) years immediately preceding the filing of this Complaint (ECF No. 1), the vast majority of employees, including Plaintiff, who worked at Defendant's locations and/or production facilities across the United States were employed in hourly-paid, non-exempt positions as part of Defendant's production process and performed compensable work at Defendant's direction and/or with Defendant's knowledge.

21. During Plaintiff's employment with Defendant, Plaintiff regularly worked alongside other hourly-paid, non-exempt Production employees in similar job positions at Defendant's Fond du Lac, Wisconsin location/production facility.

22. For purposes of the FLSA, Plaintiff brings this action on behalf of herself and all other similarly-situated current and former hourly-paid, non-exempt Production employees who were employed by Defendant at any of its Unites States locations/production facilities during the three (3) years immediately preceding the filing of this Complaint (ECF No. 1) and who were subject to the same unlawful policies, practices, customs, and/or schemes, including Defendant's failure to include all non-discretionary compensation in their regular rates of pay for overtime purposes.

23. During the three (3) years immediately preceding the filing of this Complaint (ECF No. 1), Defendant operated (and continues to operate) an unlawful compensation system that deprived and failed to compensate all current and former hourly-paid, non-exempt Production employees for all hours worked and work performed each workweek at an overtime rate of pay, by failing to include all non-discretionary compensation, such as the "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or other monetary bonuses and forms of compensation, in Production employees' regular rates of pay for overtime calculation purposes.

24. Defendant supervised Plaintiff's day-to-day activities and the day-to-day activities of all other hourly-paid, non-exempt Production employees.

25. Defendant had the ability and authority to hire, terminate, promote, demote, and suspend Plaintiff and all other hourly-paid, non-exempt Production employees.

26. Defendant had the ability and authority to review Plaintiff's work performance and the work performance of all other hourly-paid, non-exempt Production employees.

27. Defendant established the work rules, policies, and procedures by which Plaintiff and all other hourly-paid, non-exempt Production employees abided in the workplace.

28. Defendant controlled the terms and conditions of Plaintiff's employment and the employment of all other hourly-paid, non-exempt Production employees.

29. Defendant established Plaintiff's work schedule and the work schedules of all other hourly-paid, non-exempt Production employees.

30. Defendant provided Plaintiff and all other hourly-paid, non-exempt Production employees with work assignments and hours of work.

31. Plaintiff's hours of work and the hours of work of all other hourly-paid, non-exempt Production employees were tracked and recorded by Defendant.

## FMLA ALLEGATIONS

32. On or about September 27, 2017, Defendant hired Plaintiff into an Assembly position.

33. During Plaintiff's employment with Defendant, Plaintiff performed compensable work in the position of Assembly Tech III / Line Lead at Defendant's production facility in Fond du Lac, Wisconsin.

34. During Plaintiff's employment with Defendant, Plaintiff reported directly to Jennifer DeMatteo, Production Supervisor.

35. Between approximately September 27, 2017 and September 26, 2017, Plaintiff performed more than 1,250 hours of work at Defendant.

36. On or about September 27, 2018, Plaintiff became eligible for FMLA leave.

37. In approximately early October 2018, Defendant received Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson, for the time period from September 1, 2018 to April 1, 2019.

38. In approximately early October 2018, Plaintiff complied with Defendant's normal and customary policies and practices regarding requesting intermittent FMLA leave to care for her biological son, Bronson.

39. In approximately September 2018 and October 2018, Plaintiff complied with Defendant's normal and customary policies and practices for reporting her absences and tardiness from Defendant because she was caring for her biological son, Bronson.

40. At the time of Plaintiff's intermittent FMLA leave request in approximately early October 2018, Plaintiff's biological son, Bronson, was over the age of eighteen (18) years old.

41. At the time of Plaintiff's intermittent FMLA leave request in approximately early October 2018, Plaintiff's biological son, Bronson, had a history of alcohol and/or drug addiction, which were chronic, physiological and mental health conditions that substantially and significantly limited Bronson's brain functioning, normal body functioning, his ability to care for himself, and his ability to eat, sleep, communicate, bathe and groom, perform simple manual tasks or physical activities, and work.

42. At the time of Plaintiff's intermittent FMLA leave request in approximately early October 2018, Plaintiff's biological son, Bronson, was not currently engaging in the illegal use of drugs.

43. At the time of Plaintiff's intermittent FMLA leave request in approximately early October 2018, Plaintiff's biological son, Bronson, was incapable of self-care (such as eating, cooking, bathing, grooming, cleaning, transportation, and perform simple manual tasks or

physical activities) because he was suffering from the significant and negative effects of his alcohol and/or drug addiction.

44. At the time of Plaintiff's intermittent FMLA leave request in approximately early October 2018, Plaintiff's biological son, Bronson, was participating in alcohol and/or drug treatment and rehabilitation programs and was taking prescription medication.

45. In approximately early October 2018, Defendant provided Plaintiff with a document titled, "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)," to be completed by Plaintiff and Plaintiff's biological son's, Bronson's, health care provider and returned to Defendant by October 23, 2018.

46. Plaintiff received the document titled, "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)," from Defendant, completed "Section II" of the document, signed "Section II" of the document, and dated it October 11, 2018.

47. Plaintiff's biological son's, Bronson's, health care provider received the document titled, "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)," from Plaintiff, completed "Section III" of the document, signed "Section III" of the document, and dated it October 12, 2018.

48. On or about October 15, 2018, Defendant received the completed "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)" document on behalf of Plaintiff relating to Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson, who had a serious health condition.

49. The completed "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)" document, dated October 12, 2018, that Defendant received on or about October 15, 2018 on behalf of Plaintiff relating to Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson, stated: (1) that the probable duration of Bronson's condition was "lifetime with possible exacerbations"; (2) that Bronson has been treated for his condition "since 4/12/2016"; (3) that Bronson would need to have treatment visits at least twice per year due to his condition; (4) that medication, other than over-the-counter medication, was prescribed to Bronson because of his condition; (5) that Bronson had been referred to other health care provider(s) for evaluation and/or treatment because of his condition; (6) "Patient who employee is caring for needs help with transportation and emotional support for his chronic condition"; (7) that Bronson's estimated treatment schedule was one (1) to two (2) scheduled appointments "per week for 4-6 months"; (8) that Bronson's estimated care schedule was for "8 hour(s) per day; 1-2 days per week from: 9/1/18 to 4/1/19"; (9) Bronson's estimated frequency of flare-ups and duration of related incapacity was, respectively, "1 time per week" and "1-2 days per episode"; and (10) that Bronson "need[ed] care during these flare-ups" by Plaintiff, such as "monitor[ing] patient for relapse, help transport[ing] [him] to follow up [appointments]," and "compliance."

50. On or about October 15, 2018, Defendant also received a completed "Family and Medical Leave Act – Adult Child Certification of Disability" document, dated October 15, 2018, on behalf of Plaintiff relating to Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson.

51. The completed "Family and Medical Leave Act – Adult Child Certification of Disability" document, dated October 15, 2018, that Defendant received on or about October 15, 2018 on behalf of Plaintiff relating to Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson, stated: (1) that Bronson had "a mental or physical disability" as defined in the document; (2) that Bronson "need[ed] … transportation along with emotional support due to chronic condition"; (3) that Bronson was "incapable of self-care due to [his] disability"; and (4) that Bronson "require[d] active assistance or supervision" with "driving, self-care [and] assistance going to appointments."

52. On or about October 16, 2018, Defendant denied Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson.

53. On or about October 16, 2018, Defendant denied Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson, because Bronson was "Not An Eligible Family Member."

54. On or about October 16, 2018 or October 17, 2018, Defendant's Human Resources Department informed Plaintiff that Defendant denied her intermittent FMLA leave request to care for her biological son, Bronson, because, "Your son is 21 years old and per the law you have to be his legal guardian in order for him to be covered under your FMLA," or words to that effect.

55. On or about October 18, 2018, Defendant terminated Plaintiff's employment due to Plaintiff's accumulation of attendance points for alleged absences and tardiness in September 2018 and October 2018 that would have and should have been FMLA-leave covered pursuant to Plaintiff's intermittent FMLA leave request to care for her biological son, Bronson.

## FLSA ALLEGATIONS: NON-DISCRETIONARY COMPENSATION

56. During the entirety of Plaintiff's employment with Defendant, Plaintiff was an hourly-paid, non-exempt employee for purposes of the FLSA.

57. The vast majority of Defendant's employees during the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1) were hourly-paid, non-exempt Production employees.

58. During Plaintiff's employment with Defendant, Plaintiff regularly and consistently worked in excess of forty (40) hours per workweek.

59. During the three (3) years immediately preceding the filing of this Complaint (ECF No. 1), hourly-paid, non-exempt Production employees regularly and consistently worked in excess of forty (40) hours per workweek.

60. For purposes of the FLSA, and during Plaintiff's employment with Defendant, Defendant's workweek was Monday through Sunday.

61. For purposes of the FLSA, and during Plaintiff's employment with Defendant, Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees on a weekly basis.

62. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees with, in addition to their hourly or regular rates of pay, other non-discretionary forms of compensation, such as performance bonuses, commissions, incentives, and/or other monetary rewards.

63. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), the non-discretionary forms of compensation identified in the aforementioned paragraph that Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees with, in addition to their hourly or regular rates of pay, were generally in the form of "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses and non-discretionary forms of compensation.

64. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), the non-discretionary forms of compensation identified in the aforementioned paragraph that Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees with (in addition to their hourly or regular rates of pay) were remunerated to said employees on approximately a weekly basis.

65. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), the "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses and forms of compensation with which Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees (in addition to their hourly or regular rates of pay) were non-discretionary in nature: they were made pursuant to a known plan or (performance or productivity) formula and/or were announced and known to Plaintiff and all other current and former hourly-paid, non-exempt Production employees to encourage and/or reward their steady, rapid, productive, safe, consistent, regular, predictable, and/or efficient work performance and/or attendance.

66. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), the "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or other monetary bonuses and forms of compensation with which Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees (in addition to their hourly or regular rates of pay) were known, announced, and/or promised in advance to said employees if they reached or achieved certain points, goals, benchmarks, and/or criterion.

67. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), the "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or other monetary bonuses and forms of compensation with which Defendant compensated Plaintiff and all other hourly-paid, non-exempt Production employees (in addition to their hourly or regular rates of pay) were paid pursuant to a prior contract and/or agreement.

68. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), Defendant failed to include the aforementioned non-discretionary compensation in Plaintiff's and all other hourly-paid, non-exempt Production employees' regular rates of pay for overtime calculation purposes.

69. During the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1), Defendant's policies in practice unlawfully and impermissibly failed to compensate Plaintiff and all other hourly-paid, non-exempt Production employees for all hours actually worked each workweek at the correct or proper overtime rate of pay.

70. Defendant was or should have been aware that its policies in practice did not properly and lawfully compensate Plaintiff and all other hourly-paid, non-exempt Production employees for all hours actually worked each work day and each workweek, including at an overtime rate of pay.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

71. Plaintiff brings this action on behalf of herself and all other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees include:

> **FLSA Collective:** All hourly-paid, non-exempt Production employees employed by Defendant within the three (3) year period immediately preceding the filing of this Complaint (ECF No. 1) and who received "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses and non-discretionary forms of compensation that were not included in the regular rate of pay for overtime calculation purposes.

72. Defendant, as a matter of policy and practice, did not include all non-discretionary forms of compensation in the FLSA Collective's regular rates of pay for overtime calculation purposes. These practices resulted in Plaintiff and the FLSA Collective being denied overtime compensation by Defendant at the rate of one and one-half times their regular hourly rate of pay for hours worked in excess of forty (40) in a workweek.

73. The Second Claim for Relief is brought under and maintained as opt-in Collective Actions pursuant to § 216(b) of the FLSA, 29 U.S.C. 216(b), by Plaintiff on behalf of the FLSA Collectives.

74. The FLSA Collective claims may be pursued by those who affirmatively opt in to this case, pursuant to 29 U.S.C. § 216(b).

75. Plaintiff and the FLSA Collective are similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decisions, policies, plans and programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to compensate them for each hour worked including overtime compensation. The claims of Plaintiff stated herein are the same as those of the FLSA Collectives.

76. Plaintiff and the FLSA Collectives seek relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to properly and lawfully compensate employees for all hours worked, including overtime compensation, and to include all non-discretionary forms of compensation, including but not limited to "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses, in said employees' regular rates of pay for overtime calculation purposes.

77. The FLSA Collectives are readily ascertainable. For purpose of notice and other purposes related to this action, the names, phone numbers, and addresses are readily available from Defendant. Notice can be provided to the FLSA Collectives via first class mail to the last address known by Defendant and through posting at Defendant's facility in areas where postings are normally made.

78. Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and the putative FLSA Collectives.

### FIRST CLAIM FOR RELIEF
### Violations of the FMLA – Interference
### (Plaintiff on behalf of herself)

79. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

80. Defendant intentionally interfered with Plaintiff's rights and terminated her employment for exercising her rights under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq*.

81. As a result of Defendant's intentional violation of the FMLA, Plaintiff has suffered damages in the form of loss of wages and other employment benefits and insurance.

## SECOND CLAIM FOR RELIEF
## Violations of the FLSA – Unpaid Overtime
### (Plaintiff on behalf of herself and the FLSA Collective)

82. Plaintiff, on behalf of herself and the FLSA Collective, reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

83. At all times material herein, Plaintiff and the FLSA Collective have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

84. At all times material herein, Defendant was an employer of Plaintiff and the FLSA Collective as provided under the FLSA.

85. At all times material herein, Plaintiff and the FLSA Collective were employees of Defendant as provided under the FLSA.

86. Plaintiff and the FLSA Collective are victims of uniform compensation policy and practice in violation of the FLSA.

87. Defendant violated the FLSA by failing to include all non-discretionary compensation, such as "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses and non-discretionary forms of compensation, in the FLSA Collective's regular rates of pay for overtime calculation purposes.

88. Defendant violated the FLSA by failing to account for and compensate Plaintiff and the FLSA Collective for overtime premium pay for each hour they worked in excess of forty (40) hours each workweek.

89. The FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

90. Defendant was and is subject to the overtime pay requirements of the FLSA because Defendant is an enterprise engaged in commerce and/or its employees are engaged in commerce, as defined in FLSA, 29 U.S.C. § 203(b).

91. Defendant's failure to include all non-discretionary compensation, such as "Prize / Award" pay, "Wellness Credit" pay, "Non-Tobacco" pay, and/or any other monetary bonuses and non-discretionary forms of compensation, in the FLSA Collective's regular rates of pay for overtime calculation purposes was willfully perpetrated. Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the FLSA Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendant did not act willfully in failing to pay overtime premium pay wages, Plaintiff and the FLSA Collective are entitled to an award of pre-judgment interest at the applicable legal rate.

92. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff and the FLSA Collective for which Defendant is liable pursuant to 29 U.S.C. § 216(b).

93. Plaintiff and the FLSA Collective are entitled to damages equal to the mandated overtime premium pay within the three (3) years preceding the date of filing of this Complaint, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA.

94. Pursuant to FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

**WHEREFORE**, it is respectfully prayed that this Court grant the following relief:

a) Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial as a result of its violations of the FMLA;

b) At the earliest possible time, issue an Order allowing Notice, or issue such Court supervised Notice, to all similarly-situated current and former Production employees employed by Defendant informing them of this action and their rights to participate in this FLSA collective action. Such Notice shall inform all similarly-situated current and qualified former employees of the pendency of this FLSA collective action, the nature of this FLSA collective action, and of their right to "opt in" to this FLSA collective action. Additionally, such notice will include a statement informing the similarly-situated current and qualified former employees that it is illegal for Defendant to take any actions in retaliation of their consent to join this FLSA collective action;

c) Issue an Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring Defendant's actions as described in the Complaint as unlawful and in violation of the FLSA and applicable regulations and as willful as defined in the FLSA;

d) Issue an Order directing and requiring Defendant to pay Plaintiff and all other similarly-situated Production employees of Defendant damages in the form of reimbursement for unpaid overtime wages provided by the FLSA;

e) Issue an Order directing and requiring Defendant to pay Plaintiff and all other similarly-situated Production employees liquidated damages pursuant to the FLSA in an amount equal to, and in addition to the amount of overtime wages owed to them;

f) Issue an Order directing Defendant to reimburse Plaintiff and all other similarly-situated Production employees for the costs and attorneys' fees expended in the course of litigating this action, pre-judgment and post-judgment interest; and

g) Provide Plaintiff and all other similarly-situated Production employees with such other and further relief, as the Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 25th day of January, 2019.

                                      WALCHESKE & LUZI, LLC
                                      Counsel for Plaintiff

                                      s/ ***Scott S. Luzi***
                                      James A. Walcheske, State Bar No. 1065635
                                      Scott S. Luzi, State Bar No. 1067405
                                      David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com